UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| J&J SPORTS PRODUCTIONS, INC. | * | CASE NO: |
| | * | |
| VERSUS | * | |
| | * | |
| LATE NIGHT GROUP, LLC D/B/A ENCLAVE AND KELLY D. LEDUFF | * | JUDGE: |
| | * | |
| | * | |
| | * | MAGISTRATE JUDGE: |

# COMPLAINT

**To the Honorable Judges and Magistrate Judges of the United States District Court Middle District of Louisiana:**

NOW INTO COURT, through undersigned counsel, comes J&J Sports Productions, Inc. (J&J), a corporation organized under the laws of the State of California with its principal place of business located at 2380 South Bascom Avenue, Suite 200, Campbell, California 95008 and files its complaint for the following reasons:

## Venue

1.

Venue is proper in the Middle District of Louisiana because all of the defendants' actions and omissions occurred at the commercial establishment of Late Night Group, LLC d/b/a Enclave (Enclave), 600 Main Street, Baton Rouge, Louisiana 70802, but the actual registered office is 11110 Boardwalk Drive, Unit #24, Baton Rouge, East Baton Rouge Parish, Louisiana. East Baton Rouge Parish is one of the parishes composing the territory of the United States District Court for the Middle District of Louisiana.

**Jurisdiction**

2.

J&J asserts that jurisdiction of the Court is based upon:

(A) 28 U.S.C. section 1331 because the action presents a question or questions of federal law arising under the Constitution of the United States and other laws of the United States as follows:

(i) The Communications Act of 1934, as amended, Title 47 U.S.C. 605, et seq. ;

(ii) The Cable & Television Consumer Protection and Competition Act of 1992, as amended, Title 47 U.S.C. section 553, et seq., which specifically provides that a civil action may be brought in a United States District Court 553 (c)(1) ; and,

(iii) Title 18 sections 2511 (1) (a), (5) and 2520 (a).

(B) Complete diversity of citizenship and the amount in controversy exceeds the sum of $75,000.00 exclusive of interests and costs as provided in 28 USCA section 1332.

As discussed in detail below, all of the defendants committed certain acts and omissions that violated J&J's rights as the exclusive commercial domestic distributor of the televised fight Program described below. Those acts and omissions consisted of interception, reception, publication, divulgence, display and exhibition of J&J's property within the control of J&J in the State of Louisiana, but without its permission and/or authorization.

3.

**Defendants**

The following persons are the defendants in this complaint:

(a) **Late Night Group, LLC d/b/a Enclave (Enclave),** a Louisiana limited liability company operating its business at 600 Main Street, Baton Rouge, Louisiana 70802, but the actual registered office is located at 11110 Boardwalk Drive, Unit #24, Baton Rouge, East Baton Rouge Parish, Louisiana; and,

(b) **Kelly D. LeDuff (Leduff or LeDuff)**, a major resident of and domiciled at 11110 Boardwalk Drive, Unit #24, Baton Rouge, East Baton Rouge Parish, Louisiana.

4.

J&J is informed, believes and alleges that for all times pertinent to the facts of this complaint the Enclave owned, operated, licensed, permitted, had dominion over, controlled, oversaw and managed the commercial establishment doing business at 600 Main Street, Baton Rouge, Louisiana 70802, but the actual registered office is located at 11110 Boardwalk Drive, Unit #24, Baton Rouge, East Baton Rouge Parish, Louisiana.

5.

The Enclave possessed and possesses a license to sell alcoholic beverages within East Baton Rouge Parish, Louisiana as shown by the official records of the Louisiana Department of Revenue, Office of Alcohol and Tobacco Control.

6.

Upon information and belief, The Enclave's license described above was in full force and effect at all times pertinent to the facts alleged in this complaint.

7.

LeDuff completed and signed "Schedule A's", which were filed with the Louisiana Department of Revenue, Office of Alcohol and Tobacco Control as part of the process for the Enclave to acquire the license described above.

8.

The "Schedule A's" described above was notarized and also certified that LeDuff was either the "manager, member, owner, each partner, each officer, and every stockholder owning more than 5 percent of the capital stock" of the Enclave. A copy of the Schedule A's and Louisiana Secretary of State's records will be introduced into evidence at the appropriate time.

9.

Because the Enclave is a legal entity, it acts through its member. LeDuff as the member of the Enclave is also liable for all conduct occurring on the premises of the Enclave including the acts of any person who unlawfully intercepted and/or broadcast the <u>Program</u> described below, which was broadcasted on the Enclave's premises located at 600 Main Street, Baton Rouge, Louisiana 70802. Additionally, LeDuff's activities included, but are not limited to, the following:

(a) reconciling all bank accounts for the Enclave;

(b) reviewing inventory of alcoholic beverages on a daily basis;

(c) reviewing the condition and fitness of all equipment on the premises;

(d) collecting all money earned;

(e) paying all accounts payables;

(f) collecting all accounts receivables;

(g) cleaning and maintaining the furniture and fixtures;

(h) attending to any issues concerning televisions sets;

(i) reviewing all upcoming televised sporting events including, boxing, prize fights, martial arts and other similar television programming;

(j) meeting with employees to ensure that all of the items listed in (a) through and including (i) were accomplished on behalf of the Enclave.

10.

J&J is a distributor of closed circuit pay-per view boxing and special events in the United States. Pay-per view means that in order for a customer to view the closed circuit event, it/he/she must pay a fee to J&J, which is/was set by J&J.

11.

The Enclave owns/owned and operates/operated a bar, which serves/served alcoholic beverages. The Enclave does possess a license to sell alcoholic beverages as shown by the official records of the Louisiana Department of Revenue, Office of Alcohol and Tobacco Control.

12.

J&J is informed, believes and alleges that on September 13, 2014 (the night of the Program, which is described below in paragraph 19), the Enclave had the right and ability to supervise the business and activities of its lounge/bar, which included the unlawful interception and/or broadcast of J&J's Program.

13

J&J is informed, believes and alleges that on September 13, 2014 (the night of the Program, which is described below in paragraph 19), the Enclave and LeDuff supervised the activity of unlawfully intercepting and/or broadcasting J&J's Program, and, among other responsibilities, had the obligation to ensure that the sale of alcoholic beverages upon its premises was not in violation of law. It is believed that one or more of the following methods of receiving the plaintiff's Program was/were utilized by the Enclave and LeDuff:

(a) setting up a "residential" account with either a cable television service provider or a satellite television provider and paying a nominal "residential" rate directly to the cable and/or satellite television provider for reception of the plaintiff's Program;

(b) use of a "blackbox", "hotbox", or "pancake box" which was purchased for a fee and when installed on a cable television line will allow for the descrambled reception of a pay-per-view broadcast;

(c) the use of a "smartcarrd" or "test card" or "programming card" which was purchased for a fee and when installed on a DSS satellite receiver will allow for the descrambled reception of a pay-per-view broadcast;

(d) the use of an illegal cable drop or splice from an apartment or home adjacent to the commercial establishment premises (which would purchase the broadcast at a residential price and divert the Program to the commercial establishment;

(e) the purchase of other illegal unencryption devices, and the purchase of illegal satellite authorization codes which are readily available on the internet, in trade publications, and through "word of mouth"; or,

(f) streaming a signal through the internet by use of a "firestick" or similar device that may be downloaded onto a hard drive and captured by computer equipment in such a way that the Program may be viewed.

14.

J&J is informed, believes and alleges that on September 13, 2014 (the night of the Program, which is described below in paragraph 19), the Enclave and LeDuff specifically and wilfully directed its employees to unlawfully intercept and broadcast J&J's Program on the Enclave's premises. Furthermore, the actions of the Enclave's employees were/are directly imputable to the Enclave and LeDuff by virtue of their acquiescence, knowledge and acknowledgment that the unlawful interception and broadcast of J&J's Program on the Enclave's premises located at 600 Main Street, Baton Rouge, Louisiana 70802 did occur.

15.

J&J is informed, believes and alleges that on September 13, 2014 (the night of the Program, which is described below in paragraph 19), the Enclave had and possessed an obvious and direct financial interest and commercial advantage and private financial gain in the activities conducted on its premises, which included the unlawful interception of J&J's Program.

16.

.J&J is informed, believes and alleges that the unlawful and willful interception and broadcast of J&J's Program by the Enclave resulted in a commercial advantage and private

financial gain to the Enclave due to the increased profits for the Enclave and/or the possibility of increased profits for the Enclave.

17.

J&J is informed, believes and alleges that the unlawful and willful interception and broadcast of J&J's Program by the Enclave resulted in a commercial advantage and private financial gain to LeDuff due to the increased profits for the Enclave and/or the possibility of increased profits for the Enclave.

**COUNT I**

**(Violation of Title 47 U.S.C. Section 605 (a), (e) (3) (a) and (e) (4) and 18 U.S.C. section 2511 in conjunction with section 2520)**

18.

J&J incorporates by reference all of the allegations contained in paragraphs 1 through and including 17, as though reproduced here in full.

19.

Pursuant to a valid and enforceable contract, J&J was granted the exclusive nationwide commercial distribution and broadcast (closed-circuit) rights to "Mayhem" Floyd Mayweather, Jr. v. Marco Rene Maidana, II WBC World Lightweight Championship Fight Program telecast nationwide on Saturday, September 13, 2014 (this included all under-card bouts and fight commentary encompassed in the television broadcast of the event, hereinafter referred to as the Program).

20.

Pursuant to the same valid and enforceable contract, J&J, entered into subsequent sub-

licensing agreements with various commercial entities throughout North America, including entities within the State of Louisiana, by which it granted these entities limited sub-licensing rights, specifically the rights to publicly exhibit the Program within their respective commercial establishments in the hospitality industry (i.e., hotels, racetracks, casinos, bars, taverns, restaurants, social clubs and other similar businesses). The defendants were **not** granted sub-licensing rights and/or any other right concerning the Program.

21.

As a commercial distributor and licensor of sporting events, including the Program, J&J expended substantial monies marketing, advertising, promoting, administering, and transmitting the Program to its customers, the commercial entities described above.

22.

With full knowledge that the Program was not to be intercepted, received, published, divulged, displayed, and/or exhibited by commercial entities unauthorized to do so, the defendants named above, either through direct action or through actions of employees or agents directly imputable to the defendants (as outlined in paragraphs 1 through and including 21 above), did unlawfully intercept, receive, publish, divulge, display, and/or exhibit the Program at the time of its transmission at the defendant, The Enclave's, commercial establishment located at 600 Main Street, Baton Rouge, LA 70802.

23.

The unauthorized interception, reception, publication, exhibition, divulgence, display, and/or exhibition by each of the defendants was done wilfully and for purposes of direct and/or indirect commercial advantge and/or private financial gain. J&J stands ready to present eye-

witness testimony and other evidence supporting all allegations made in this complaint.

24

Title 47 U.S.C. Section 605, et seq. and Title 18 U.S.C. sections 2511 and 2520 prohibit the unauthorized publication or use of communications (such as the transmission of the Program for which J&J had the exclusive distribution rights).

25

By reason of the actions, omissions and conduct of all of the defendants described above, each of the defendants violated Title 47 U.S.C. Section 605, et seq. and Title 18 U.S.C. sections 2511 and 2520.

26.

By reason of the actions, omissions and conduct of all of the defendants described above, which resulted in the violation of Title 47 U.S.C. Section 605, et seq, and Title 18 U.S.C. sections 2511 and 2520, J&J has the private right of action pursuant to Title 47 U.S.C. Section 605 and Title 18 U.S.C. sections 2511 and 2520.

27.

By reason of the actions, omissions and conduct of all of the defendants described above, which resulted in the violation of Title 47 U.S.C. Section 605, et seq, and 18 U.S.C. sections 2511 and 2520, J&J is entitled to the following from each defendant:

(a) Statutory damages for each willful violation in an amount to $100,000.00 pursuant to Title 47 U.S.C. 605 (e)(3)(C)(ii), and also

(b) Recovery of full costs, including reasonable attorney's fees pursuant to Title 47 U.S.C. Section 605(e)(3)(B)(iii).

**COUNT II**

**(Violation of Title 47 U.S.C. Section 553)**

28.

J&J incorporates by reference all of the allegations contained in paragraphs 1 through and including 27 as though reproduced here in full.

29.

The unauthorized interceptions, reception, publication, divulgence, display, and/or exhibition of the Program by the above named defendants was prohibited by Title 47 U.S.C. section 553, et seq.

30.

By reason of the actions, omissions and conduct of all of the defendants described above, each of the defendants violated Title 47 U.S.C. Section 553, et seq.

31.

By reason of the actions, omissions and conduct of all of the defendants described above, which resulted in the violation of Title 47 U.S.C. Section 553, et seq, J&J has the private right of action pursuant to Title 47 U.S.C. Section 553.

32.

By reason of the actions, omissions and conduct of all of the defendants described above, which resulted in the violation of Title 47 U.S.C. Section 553, et seq, J&J is entitled to the following from each defendant:

(a) Statutory damages for each violation in an amount to $10,000.00 pursuant to Title 47 U.S.C. 553 (c)(3)(A)(ii), and also

(b) Statutory damages for each willful violation in an amount to $50,000.00 pursuant to Title 47 U.S.C. 553 (c)(3)(B), and also

(c) Recovery of full costs, including reasonable attorney's fees pursuant to Title 47 U.S.C. Section 553(c)(2), and also

(d) in the discretion of this Honorable Court, reasonable attorney's fees, pursuant to Title 47 U.S.C. section 553 (c) (2) ©.

33.

Despite the existence of two separate and distinct federal laws (Title 47 U.S.C. Section 605, et seq. and Title 18 U.S.C. sections 2511 and 2520 AND Title 47 U.S.C. Section 553, et seq), which were enacted at different times, some federal courts have held that a successful plaintiff may only receive damages under one of those laws but not both. J&J asserts its claims under both sets of federal laws, but if the Court should find that the violations stated above occurred under one or the other statutes cited or that J&J may only recover one set of damages, then to that extent, J&J's claims should be considered as alternative claims. J&J does not seek double damages.

THEREFORE, J&J Sports Productions, Inc. prays that all of the defendants be served with a summons and a copy of this complaint and required to answer it within the legal delays provided by the Federal Rules of Civil Procedure.

FURTHERMORE, J&J Sports Productions, Inc. prays for judgment in its favor and against all of the defendants,, in solido, for the following sums of money, subject to the jurisprudential rule that double damages are not permitted:

**As to Count I (Violation of Title 47 U.S.C. Section 605 and Title 18 U.S.C. sections 2511 and 2520)**

At J&J's elections in accordance with 47 U.S.C. section (e) (3) (B) and (C) (ii),

(a) statutory damages in the amount of $110,000.00 against the defendants, and each of them; and,

(b) reasonable attorney's fees as mandated by statute; and,

(c) all costs of suit, including but not limited to filing fees, service of process fees, iThe Enclaveestigative costs; and,

(d) such other and further relief as this Honorable Court may deem just and proper.

**As to Count II (Violation of Title 47 U.S.C. Section 553 (a) (1), (c)(1), (2), (B), (C), 3 (A), (B))**

(a) statutory damages in the amount of $60,000.00 against the defendants, and each of them;

(b) reasonable attorney's fees as may be awarded in the Court's discretion pursuant to statute;

(c) all costs of suit, including but not limited to filing fees, service of process fees, investigative costs; and,

(d) such other and further relief as this Honorable Court may deem just and proper.

The Berthelot Law Firm, LLC
1660 Thibodeaux Avenue
Baton Rouge, Louisiana 70802
(225) 454-0488—cell phone
1-484-842-8566–facsimile
ronniejberthelot@gmail.com
By: s/Ronnie J. Berthelot
Ronnie J. Berthelot, T.A.
LSBA bar roll no. 1012

UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| J&J SPORTS PRODUCTIONS, INC. | * | CASE NO: |
| | * | |
| VERSUS | * | |
| | * | |
| LATE NIGHT GROUP, LLC D/B/A ENCLAVE AND KELLY D. LEDUFF | * | JUDGE: |
| | * | |
| | * | |
| | * | MAGISTRATE JUDGE: |

Certificate of Service

I certify that I mailed the foregoing "Complaint" to the following defendants—an attorney is unknown at this time–:

Late Night Group, LLC
d/b/a Enclave
11110 Boardwalk Dr.
Unit #24
Baton Rouge, LA 70816

Kelly D. LeDuff
11110 Boardwalk Dr.
Unit #24
Baton Rouge, LA 70816

by placing a copy of the "Civil Cover Sheet" and the "Complaint" in the United States Mail properly addressed and postage pre-paid on January 12, 2017.

s/Ronnie J. Berthelot
Ronnie J. Berthelot